**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

SERGIO COLON GONZALEZ,

Petitioner,

v.

RUBEN LEYVA, *et al*.,

Respondents.

Case No. 2:26-cv-01218-RFB-EJY

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Sergio Colon Gonzalez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. See generally Petition, ECF No. 1-1. For the following reasons, the Court grants the Petition and orders Federal Respondents to provide Petitioner a constitutionally adequate bond hearing within three days or immediately release him from custody on personal recognizance.

Petitioner challenges the lawfulness of his ongoing detention at Nevada Southern Detention Center ("NSDC") in the custody of Immigration and Customs Enforcement ("ICE"). Federal Respondents (also referred to herein as "the government") are detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A), a provision of the Immigration and Nationality Act ("INA") which generally[1] mandates detention without the possibility of release on bond or parole during the pendency of a noncitizen's removal proceedings. See generally Federal Respondents' Response to Petitioner's Verified Petition for Habeas Corpus, ECF No. 8 [hereinafter, "Return"]. Petitioner

---

[1] Noncitizens detained under § 1225(b) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" at the arresting ICE officer's discretion. Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at *8 (D. Nev. Mar. 30, 2026) (citing Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5)).

asserts that his detention pursuant to § 1225(b)(2)(A) violates the INA and this Court's declaratory judgment and vacatur in Jacobo-Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799 (D. Nev. Mar. 30, 2026).

The government invokes its novel statutory interpretation of § 1225(b)(2)(A) as the sole authority for Petitioner's detention. See generally Return. It does not assert any individualized justification for the ongoing detention but insists his detention is mandated by statute regardless of his individual circumstances. See id. On March 30, 2026, the Court issued a classwide judgment declaring the government's interpretation of § 1225(b)(2)(A)—and its mass immigration detention policies that arise from that interpretation—unlawful, because undocumented noncitizens like Petitioner, who are arrested by ICE officers in the interior of the country and alleged to have entered without inspection or parole, are subject to detention under 8 U.S.C. § 1226(a), and its implementing regulations, 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. See Jacobo-Ramirez, 2026 WL 879799 at *33. Pursuant to § 706(2)(A) of the Administrative Procedures Act, the Court vacated the government's § 1225(b)(2)(A) policies, which were encapsulated in an internal ICE Memo and the Board of Immigration Appeals (BIA) decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025), as unlawful under the INA. See id.

As discussed below, and as the government concedes, the Court finds that Petitioner is a member of the Jacobo-Ramirez Class. Therefore, his arrest and ongoing detention under § 1225(b)(2)(A) is unlawful and violates this Court's declaratory judgment and vacatur. Given the government's violations in this case, the Court finds the appropriate remedy is a prompt bond hearing where the government bears the burden of justifying Petitioner's detention under § 1226(a) by clear and convincing evidence.

## I.    CLASS MEMBERSHIP

From the outset, the Court finds that Petitioner is a member of the Jacobo-Ramirez Class, which is defined as:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or

will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Jacobo-Ramirez, at *4, n.2 [hereinafter "Class Members"].

The government concedes Petitioner is a Class Member. Reynoso v. Giurbino, 462 F.3d 1099, 1110 (9th Cir. 2006) (the government "is bound by its concessions"). Based on the undisputed verified factual allegations in the Petition, and the evidence supplied by the parties, the Court finds Petitioner satisfies the criteria for Jacobo-Ramirez Class Membership. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

First, Petitioner is an undocumented noncitizen who was arrested and detained by ICE on February 10, 2026, and he remains detained. See Pet. at 2, ECF No. 1-1; Return, Ex. A, DHS Form I-213 Record of Deportable/Inadmissible Alien ("I-213"), ECF No. 8-1. Second, he is in removal proceedings before the Las Vegas Immigration Court, which is within the District of Nevada. See Pet. at 2. Third, the Department of Homeland Security (DHS) alleges that Petitioner entered the United States without inspection, admission, or parole. See Pet. at 2; Return, Ex. A at 3 (Form I-213). Fourth, the government is detaining Petitioner pursuant to § 1225(b)(2)(A) and does not assert that Petitioner is or will be subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See generally, Return. Fifth, Petitioner was most recently arrested well within the country's interior, not while he was arriving in the United States. See Am. Pet. at 6; Id., Ex. 1 at 3 (I-213).

In sum, Petitioner is clearly a Jacobo-Ramirez Class Member entitled to the relief afforded to the Class by this Court. Cf. Navarro v. Mukasey, 518 F.3d 729, 737 (9th Cir. 2008) ("They are, accordingly, class members eligible for relief."). Therefore, the Court finds his ongoing detention is unlawful under the INA, and his detention is governed by § 1226(a) and its implementing regulations. See Jacobo-Ramirez, 2026 WL 879799, at *33–34.

## II.    REMEDY

Based on the record before it, the Court finds that Petitioner has been subjected to unlawful

arrest and detention in violation his statutory rights and this Court's declaratory judgment and vacatur. The Court's task then is to determine the appropriate remedy for these violations. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (alterations in original) (citations omitted). Petitioner asserts "he is entitled to a bond hearing before an immigration judge at which the government bears the burden of proving by clear and convincing evidence that he presents a danger to the community or flight risk." See Pet'r's Traverse at 2, ECF No. 9. For the following reasons, the Court finds that ordering Federal Respondents to provide Petitioner a bond hearing within three business days or release him from custody is the appropriate equitable remedy in this case.[2]

First, the Court finds that Petitioner was arrested and detained without a warrant or initial custody determination pursuant to 8 C.F.R. § 236.1, in violation of his statutory rights and the Court's declaratory judgment and vacatur. Despite being ordered to do so by this Court, Federal Respondents failed to produce a I-200 Warrant for Arrest of Alien or Form I-286 Initial Custody Determination as to Petitioner, or in the alternative, "certify" that such documents are not in their possession, custody, or control. See Order to Show Cause ("OSC") at 2–3, ECF No. 4. The Court finds Respondents' failure to produce evidence of an arrest warrant and individualized custody determination, without so much as an acknowledgement or explanation, despite the Court's OSC, is a concession that no such records exist as to Petitioner, and he was detained without the procedures required by § 1226(a) and this Court's classwide judgment. See Jacobo-Ramirez, 2026 WL 879799, at *31. ("The Court issues a classwide declaratory judgment that Class Members are subject to detention under § 1226(a) and its implementing regulations. Defendants must therefore comply with 8 C.F.R. §§ 236.1(b); 236.1(c)(8) in arresting and detaining any Class Member. If

---

[2] In reaching this conclusion, the Court does not consider whether immediate release from custody is an appropriate remedy in this case. While, the Court has awarded such relief to similarly situated non-citizens, Petitioner has not requested the Court order his immediate release. See generally, e.g, Ramirez-Anaya v Mattos, No. 2:26-CV-01057-RFB-EJY, 2026 WL 1362540 at 5–6; (D. Nev. May 15, 2026); Ruvalcaba v. Blanche, No. 2:26-CV-01312-RFB-BNW, 2026 WL 1362542, at *4 (D. Nev. May 15, 2026) Reyes v. Blanche, No. 2:26-CV-00587-RFB-MDC, 2026 WL 1415010 at 5–6 (D. Nev. May 20, 2026).

Defendants deny release on bond or conditional parole after an initial custody determination, Class Members are entitled to custody redetermination(s) before an immigration judge upon request consistent with 8 C.F.R. §§ 236.1(d); 1003.19.").

Further, as a result of being detained under § 1225(b)(2)(A), Petitioner was deprived of notice and an opportunity to challenge the government's basis for his arrest and detention, in contrast to procedural protections available under mandatory detention provisions of the INA that apply to noncitizens liker Petitioner who are arrested within the interior of the country and not while arriving[3] at its borders. See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (describing the availability of a "Joseph hearing" which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)" where "the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I.&N. Dec. 799 (BIA 1999)).

Second, the Court considers Federal Respondents' continued enforcement of detention policies that it has found, in a binding judgment, to be unlawful. Here, Petitioner was arrested without an initial custody determination in February of 2026, pursuant to ICE's internal policy instructing officers not to issue custody determinations to undocumented noncitizens apprehended within the country, "because such initial custody determinations are only required under 8 U.S.C. § 1226 and its implementing regulations." Jacobo-Ramirez, 2026 WL 879799 at *8 (citing the July 8, 2025 ICE Memo "Interim Guidance Regarding Detention Authority for Applicants for Admission" by Acting ICE Director Todd Lyons which outlined "the official formal nationwide policy of DHS and DOJ"). This Court vacated ICE's unlawful internal policy under the Administrative Procedures Act on March 30, 2026. See id. at *33. Over fifty days have passed, and Federal Respondents have taken no action to cure Petitioner's unlawful detention by providing him with an initial custody determination and the opportunity to promptly seek review of that

---

[3] ICE's arrest and detention policy under § 1225(b)(2)(A) specifically instructs arresting ICE officers to treat noncitizens like Petitioner "in the same manner that 'arriving aliens' have historically been treated." See Jacobo-Ramirez, 2026 WL 879799, at *8 (quoting the July 8, 2025 internal ICE Memo).

determination before an immigration judge.

Indeed, since the Court's classwide judgment in <u>Jacobo-Ramirez</u>, Federal Respondents have not been deterred from continuing to detain Class Members like Petitioner without appropriate custody determinations, all while "repeatedly—and increasingly—violating this Court's orders." <u>See</u>, e.g., <u>Jimenez Gomez v. Dep't of Homeland Sec.</u>, No. 2:26-CV-00922-RFB-DJA, 2026 WL 1164736, at *2 (D. Nev. Apr. 29, 2026) (collecting examples[4] of Federal Respondents violating this Court's explicit orders including by, *inter alia*, removing petitioners from the District of Nevada, failing to release petitioners, ignoring deadlines, and unlawfully imposing release conditions). "By violating this Court's orders, Respondents are undermining their credibility and the rule of law. Their conduct also causes unnecessary trauma and harm to petitioners." <u>Id.</u>

For these reasons, the Court is not convinced that Respondents' unlawful conduct will cease in the aftermath of this Order. Therefore, the Court finds that it must adopt equitable measures to remedy Petitioner's months of unlawful detention and ensure Federal Respondents, including the Las Vegas Immigration Court which operates under Federal Respondents' authority, provide Petitioner adequate process and abide by the Court's classwide judgment going forward.

---

[4] Since the Court's decision in Jimenez Gomez, the Court has become aware of numerous other instances of Federal Respondents violating this Court's explicit orders. <u>See</u>, e.g., <u>Sira v. Bondi</u>, Case No. 2:26-CV-00828-RFB-DJA, ECF No. 8 (D. Nev. Apr. 21, 2026) (finding the government transferred petitioner out of the district in violation of court order and ordering return); <u>Cortez Diaz v. Blanche</u>, 2:26-CV-01056, ECF No. 10 (D. Nev. Apr. 29, 2026) (same); <u>Yanes-Quijada v. Mattos</u>, Case No. 2:26-CV-01221-RFB-NJK, ECF No. 16 (D. Nev. May 7, 2026)  (finding the government failed to certify a lawful basis for a Class Member's detention in response to an order to show cause, failed to produce documents or certify they do not exist, etc., and ordering Petitioner's immediate release "given the egregious nature of his unjustified detention"); <u>Garcia Diaz v. Mattos</u>, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816 (D. Nev. May 9, 2026) (finding the petitioner remained in detention in violation of the Court's Order and equitably estopping ICE from taking  fundamentally inconsistent positions in federal habeas proceedings and immigration court); <u>Cruz Perez v. Bondi</u>, No. 2:26-CV-00316-RFB-DJA, ECF No. 31 (D. Nev. May 15, 2026) (finding the IJ failed to apply the appropriate evidentiary burden at a court-ordered bond hearing in violation of the Court's conditional writ, and ICE unilaterally imposed surveillance monitoring in violation of agency regulations and due process); <u>Malta De Sa v. Mullin</u>, No. 2:26-CV_00594-RFB-MDC, ECF No. 25 (finding DHS and ICE unilaterally imposed burdensome release conditions on the petitioner in violation of the Court's explicit order prohibiting them from doing so). This is far from an exhaustive list.

Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings).

Here, the Court finds the appropriate remedy is a bond hearing where the burden to justify Petitioner's detention is shifted to the government, or release from custody. Specifically, the Court orders Federal Respondents to conduct a bond hearing for Petitioner wherein the government must prove, by clear and convincing evidence, that Petitioner's civil detention is necessary to prevent danger to the community or to ensure his future appearance at removal proceedings. Cf. Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that, "[g]iven the substantial liberty interest at stake[,] . . . the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond" in the context of prolonged detention under § 1226), abrogation on statutory grounds recognized by Rodriguez Diaz v. Garland, 53 F.4th 1189 (9th Cir. 2022)[5]; Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (reviewing the immigration court and BIA's compliance with the district court's habeas order that petitioner be provided a bond hearing where the "government bore the burden to establish by clear and convincing evidence that he is a danger to the community") (citing Singh, 638 F.3d at 1196). While the Court does not take this step lightly, it finds it is necessary because of the violations of law and Petitioner's rights perpetrated by Federal Respondents to date.

---

[5] In Jennings, the Supreme Court held that 8 U.S.C. §§ 1225, 1226(a), (c) do not create an implied statutory right to periodic bond hearings. Jennings v. Rodriguez, 583 U.S. 281, 286 (2018) In Rodriguez Diaz, the Ninth Circuit recognized that the Supreme Court had abrogated previous Ninth Circuit opinions which had applied the canon of constitutional avoidance to read requirements for periodic bond hearings into certain immigration detention statutes. Rodriguez Diaz, 53 F.4th at 1200. Nevertheless, the Ninth Circuit recognized that the "Supreme Court in Jennings did not reach the alleged unconstitutionality of immigration detention absent the procedural requirements we had read into the statute, and instead remanded for consideration of the constitutional question in the first instance." Id. The Ninth Circuit did not address "the potential applicability, if any, of Singh's holding absent that perceived statutory right" and noted that the court, at that time, had "no occasion to decide whether Singh remains good law in any respect following Jennings." Id. at 1202, 1202 n.4. In other words, "the Ninth Circuit has not abrogated Singh's constitutional holding, and it still appears binding on this Court." De La Garza v. Albarran, No. 25-cv-10305-HSG, 2025 WL 3707049, at *2 (N.D. Cal. Dec. 22, 2025); see also Singh v. Warden, No. 1:26-CV-01973-DAD-CSK, 2026 WL 1328588, at *2, n.2 (E.D. Cal. May 13, 2026) (accord); Rodriguez v. Bostock, 802 F. Supp. 3d 1297, 1321 n.5 (W.D. Wash. 2025)("This Court will (and must) continue to follow the portions of Singh that have not been overruled.").

Given the injuries Petitioner has suffered and continues to suffer due to the government's ongoing enforcement of unlawful detention policies despite the Court's declaratory judgment and vacatur, the Court orders Federal Respondents to provide the above-described bond hearing promptly, within three business days—*i.e.*, no later than **May 26, 2026**, or immediately release Petitioner from custody on his own recognizance.

III.    **CONCLUSION**

Based on the foregoing, **IT IS HEREBY ORDERED** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1-1) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) by **May 26, 2026**. At this hearing, the government must prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community to justify denial of bond.

**IT IS FURTHER ORDERED** the immigration court must create a contemporaneous record of the bond hearing that is available to Petitioner upon request, see Singh, 638 F.3d at 1208, and that is available to this Court so that it can ensure the immigration court's compliance with this Order.

**IT IS FURTHER ORDERED** that if bond is granted, Respondents shall **IMMEDIATELY RELEASE** Petitioner from detention. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond through ICE payment portals, and, therefore, **IT IS FURTHER ORDERED** that Petitioner be afforded until **June 26, 2026**, to satisfy any monetary bond conditions.

**IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from invoking 8 C.F.R. § 1003.19(i)(2) to continue Petitioner's detention, as the Court has already found that the regulatory automatic stay is facially unconstitutional and adopts that finding here. See generally Herrera v. Knight, 798 F. Supp. 3d 1184 (D. Nev. 2025).

**IT IS FURTHER ORDERED** that if a constitutionally adequate bond hearing is not conducted by **May 26, 2026**, Respondents must **IMMEDIATELY RELEASE** Petitioner from

custody on his own recognizance. This means Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing before an immigration judge.

**IT IS FURTHER ORDERED** that the Parties shall file a joint status report by **May 27, 2026**. The status report shall detail whether the bond hearing occurred, whether bond was granted or denied, and, if denied, the reasons for that denial. If bond was granted, or the bond hearing has not occurred, the status report shall confirm the date and time of Petitioner's release from detention in compliance with this Order.

**IT IS FURTHER ORDERED** that if bond is denied, Federal Respondents must (1) **ATTACH** the order of the immigration judge to the joint status report and (2) **PROVIDE** the contemporaneous record of the bond hearing to Petitioner's counsel upon request.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** May 21, 2026.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**